IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Frankiewicz,                         :
                                             :
                    Petitioner               :
                                             :
          v.                                 : No. 20 C.D. 2017
                                             : Submitted: September 1, 2017
Workers' Compensation Appeal                 :
Board (Kinder Morgan, Inc.),                 :
                                             :
                    Respondent               :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                      FILED:  November 14, 2017


          Kenneth Frankiewicz (Claimant) petitions for review from an order of
the Workers' Compensation Appeal Board (Board) that affirmed a Workers'
Compensation Judge's (WCJ) decision denying Claimant's Petition for Workers'
Compensation Benefits (Claim Petition), Petition to Review Medical Treatment
and/or Billing (Review Medical Petition), Petition to Review Compensation
Benefits (Review Petition), and Petition for Penalties (Penalty Petition) filed against
Kinder Morgan, Inc. (Employer).  Claimant contends that the WCJ erred by
improperly applying the mental-mental standard, as opposed to the physical-mental
standard, to his mental disability claim.  Discerning no error, we affirm.

## I. Background

On May 23, 2012, Claimant filed a Claim Petition alleging that he sustained an injury on April 20, 2012, in the nature of dizziness, headaches, shortness of breath, and a sinus infection from exposure to a diesel leak from a nearby Hess facility, while in the course and scope of his employment as a chemical operator with Employer. Certified Record (C.R.) at 9. A year later, Claimant filed a Penalty Petition and Review Medical Petition alleging Employer violated the Workers' Compensation Act (Act)[1] by not paying for his emergency room treatment on the date of the injury and by not issuing a denial until six months after the incident. Claimant also filed a Review Petition alleging an incorrect description of his injury and a worsening of his condition. Specifically, Claimant claimed he suffered cellulitis caused by staphylococcus and/or streptococcus (blood infection). C.R. at 86. Employer filed timely answers denying the material allegations in the petitions. The petitions were consolidated and assigned to a WCJ, who held hearings. WCJ's Opinion, 10/2/15, Finding of Fact (F.F.) No. 5.

In support of his petitions, Claimant testified that, on Friday, April 20, 2012, he was working on a loading dock on the Delaware River in Philadelphia where he perceived an odor of fuel all day. He also noticed fuel floating on the water from a discharge of diesel fuel from a plant a mile away. He experienced headache, nausea, violent vomiting, choking, a runny nose and watery eyes. He also developed symptoms of sweating and shaking, throat pain and abdominal pain. He was taken to Hahnemann University Hospital's emergency room and was discharged three-and-one half hours later and advised to visit his family doctor if he did not feel better. Claimant did not work the following day, but he returned to work on Sunday. On

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2708.

Monday, Claimant went to his family doctor, who did not prescribe medication or refer him to another doctor. A week later, Claimant got a sinus infection. His doctor recommended over-the-counter sinus medicine (Claritin). Claimant believes that his sinus problems were caused by the April 20, 2012 work incident. Claimant also testified that since the incident, he has experienced digestive issues, including vomiting and acid reflux, for which he takes medicine, as well as breathing problems, chest pains, and fatigue. Although Claimant continued to work after the incident, he started to wear a respirator, rubber suit and hardhat with a shield as protection. Claimant testified that he experiences panic attacks, anxiety, and depression, as well as problems with his wife and parenting, which he attributed to the work incident. He takes Lorazepam for his nerves, an inhaler for his breathing problems, Hydrocodone for his neck pain, medication for nausea, medication for stomach and esophageal corrosion, as well as Cialis or Viagra. Reproduced Record (R.R.) at 52a. Claimant stopped working on September 15, 2012. However, he testified his symptoms have not improved. He is still dealing with sinus issues, sore throat, occasional nausea, and labored breathing if he climbs stairs. In November 2014, Claimant developed a serious blood infection, which hospitalized him for eight days. F.F. Nos. 4, 10b, 16-18.

Both parties submitted expert medical evidence. Claimant presented the deposition testimony of his family physician, Theodore Porter, D.O. Dr. Porter diagnosed Claimant with insomnia, sinusitis, esophageal/gastric erosion, headaches, dysphagia, shortness of breath, thoracic compression, neurasthenia, erectile dysfunction, back pain, bilateral shoulder strain, vomiting, pancreatitis, pulmonary insufficiency, and possible sleep apnea. Dr. Porter attributed these issues to the exposure of fuel vapors over his 15-year career with Employer and Claimant's

3

history. He also diagnosed Claimant with post-traumatic stress disorder (PTSD), pulmonary problems, and sleep issues and related them to his employment with Employer. He opined that Claimant is not able to return to work. F.F. Nos. 13, 14.

Claimant also submitted the deposition testimony of Brian Raditz, Ed.D., an unlicensed psychologist and doctor of education, who diagnosed Claimant with pain disorder and attendant anxiety, depression, irritability, and sleep difficulty. Dr. Raditz testified Claimant's psychological condition is disabling and is a direct result of the April 20, 2012 work incident. F.F. No. 15.

Claimant also offered the deposition of Frank Spisak, a pump operator for Employer, who confirmed the fuel leak and described the length and strength of the fumes. He also observed Claimant's decline in health following the incident. F.F. No. 19. Finally, Claimant's wife testified regarding the changes she observed in her husband following the incident. F.F. No. 20.

Employer presented the deposition testimony of John Cohn, M.D., who is board certified in internal medicine, in pulmonary medicine, and in allergy and immunology. After examining Claimant and reviewing his records, he could not identify a work-related condition. Dr. Cohn could not identify Claimant as being disabled as a result of his exposure from the April 20, 2012 incident, nor could he identify any specific medical treatment that was required as a result of his exposure. He testified that Dr. Porter's list of ailments was so long that it was difficult to tell which ones were keeping him from working. Dr. Cohn opined that Claimant seemed to be having complaints in excess of what could be objectively demonstrated. F.F. No. 11.

Employer also presented the deposition testimony of Wolfram Rieger, M.D., a board certified psychiatrist, who examined Claimant and took a history from

4

him. He opined that Claimant did not have a psychiatric disorder related to any work-related incident. Rather, he concluded that Claimant is suffering from pre-existing depression that was not aggravated by the work incident. F.F. No. 12.

Given the complexity of Claimant's health issues, the WCJ appointed an independent medical examiner, Michael Greenberg, M.D., at the Bureau of Workers' Compensation's expense to examine Claimant and issue an impartial report. Dr. Greenberg is the Chief of the Division of Medical Toxicology at Drexel University within the Department of Emergency Medicine and is board-certified in Occupational/Environmental Medicine and Medical Toxicology and in Emergency Medicine. Dr. Greenberg examined Claimant and his medical records and issued a 32-page report. His comprehensive evaluation of Claimant was normal. Claimant's complaints were consistent with anxiety and depression in the context of symptom magnification as well as insomnia and somatic complaints. However, Dr. Greenberg opined that there was no evidence of: (1) acute or chronic toxic exposure syndrome; (2) toxicological illness or injury; (3) reactive airways dysfunction syndrome (RADS); or (4) acute or chronic pharyngitis. He described Claimant's alleged exposure as "extremely brief, if not fleeting." F.F. No. 10(g). He opined there was no evidence of a completed exposure pathway. The perception of odor did not constitute an effective or valid exposure pathway. "There was no evidence of an exposure source for any specific chemical or chemicals, there was no evidence of a medically important exposure or medically important dose, and there was no documentation of a relevant or recognized medical adverse outcome." F.F. No. 10(h). In essence, he found no evidence of any injury or illness as a result of the April 20, 2012 incident. According to Dr. Greenberg, the most likely diagnosis for

5

all of Claimant's symptoms was anxiety/depression in the context of symptom magnification and obstructive sleep apnea. F.F. Nos. 8-10.

The WCJ found the opinions of Dr. Greenberg and Dr. Cohn to be more credible than the opinions of Dr. Porter. F.F. No. 21. He also found the testimony of Dr. Rieger more credible than that of Dr. Raditz. F.F. No. 24. The WCJ credited Claimant's testimony. F.F. No. 23. The WCJ detailed his reasons for making his credibility determinations. F.F. Nos. 21, 23, 24.

The WCJ opined that the determination of whether exposure to a diesel oil spill caused Claimant's symptoms and diagnoses was not obvious; Claimant needed to prove causation by expert medical evidence. The WCJ found that Claimant did not meet his burden. Relying predominantly on the report and medical opinions of Dr. Greenberg, the WCJ found that the medical evidence does not support a finding that Claimant's exposure to diesel fumes was the cause of his symptoms or the reason for his disability on September 15, 2012. In short, the WCJ found that Claimant did not suffer a physical work injury as a result of his exposure to diesel fumes on April 20, 2012. F.F. Nos. 21-23.

Significantly, however, the WCJ found that Claimant appeared to have suffered a psychological injury from the incident. F.F. No. 24. "Almost every doctor, including Dr. Greenberg[,] believes Claimant is suffering from a psychological injury." *Id.* But, because Claimant did not prove that his physical symptoms were caused by the work incident, the WCJ did not apply the physical-mental standard. Rather, the WCJ applied the mental-mental standard to his claim, which requires a claimant to prove abnormal working conditions. The WCJ found that Claimant did not meet his burden of proving an abnormal working condition to support his alleged psychiatric disability. Although the diesel spill was an unusual

6

event, there was no evidence presented that this was an abnormal working condition for a chemical operator such as Claimant. Ultimately, the WCJ concluded that Claimant did not sustain a work-related injury due to an exposure to diesel fumes on April 20, 2012. F.F. No. 24. Thus, the WCJ denied each of Claimant's petitions. WCJ's Opinion, Conclusions of Law, Nos. 2-4.

From this decision, Claimant appealed to the Board, which affirmed. Claimant now petitions this Court for review.[2]

## II. Issue

On appeal, Claimant argues that the WCJ and the Board erroneously applied the "mental-mental" or "abnormal working conditions" standard to this matter as opposed to the "physical-mental" standard. Under the physical-mental standard, a claimant must prove a triggering work-related physical stimulus caused his mental injury. Claimant contends he met this burden by showing that his exposure to the diesel spill at work caused a physical injury, including headache, nausea, and vomiting, which necessitated immediate medical treatment. This physical injury was the triggering stimulus that caused his mental disability. Almost all of the medical experts agreed that Claimant has suffered a psychiatric injury as a result of the work incident. Claimant asserts that reversal is warranted because the WCJ denied his Claim Petition based solely on the lack of "abnormal working conditions."

## III. Discussion

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

With respect to a claim petition, the claimant bears the initial burden of proving that his injury arose in the course of employment and was related thereto. *Wachs v. Workers' Compensation Appeal Board (American Office Systems)*, 884 A.2d 858, 862 (Pa. 2005) (citing *Krawchuk v. Philadelphia Electric Co.*, 439 A.2d 627, 630 (Pa. 1981)). Generally, if there is no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet this burden of proof. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel)*, 626 A.2d 1144, 1146 (Pa. 1993); *Lewis v. Workmen's Compensation Appeal Board*, 498 A.2d 800, 802 (Pa. 1985). The medical witness must testify that, in his or her professional opinion, the injury came from the work incident. *Lewis*, 498 A.2d at 802.

Mental injuries fall into three categories: "[(1)] mental-mental, whereby a mental or psychic condition is caused by a psychic stimulus; [(2)] mental-physical, whereby a psychic injury manifests itself in some physical form; and [(3)] physical-mental, whereby a physical injury results in psychic distress." *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543, 550 (Pa. 2013); *accord Ryan v. [Workmen's] Compensation Appeal Board (Community Health Services)*, 707 A.2d 1130, 1133–34 (Pa. 1998); *Murphy v. Workers' Compensation Appeal Board (Ace Check Cashing Inc.)*, 110 A.3d 227, 234 (Pa. Cmwlth.) (*en banc*), *appeal denied*, 126 A.3d 1286 (Pa. 2015).

If a claimant's mental disability was caused by a psychological stimulus, the mental-mental standard applies. *Payes*, 79 A.3d at 550; *Murphy*, 110 A.3d at 235. To prevail under the mental-mental standard, a claimant must prove abnormal working conditions. *Payes*, 79 A.3d at 550.

Where, as here, a claimant asserts a claim under the physical-mental standard, the claimant must establish that the mental injury resulted from "a triggering physical stimulus" and arose during the course of employment. *Murphy*, 110 A.3d at 234 (citing *Bartholetti v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 927 A.2d 743, 746 (Pa. Cmwlth. 2007)). Our case law has interpreted the term "physical stimulus" to mean "a physical injury that requires medical treatment, even if that physical injury is not disabling under the [Act]." *Murphy*, 110 A.3d at 234*; accord Ryan*, 707 A.2d at 1131*; Anderson v. Workers' Compensation Appeal Board (Washington Greene Alternative)*, 862 A.2d 678, 685 (Pa. Cmwlth. 2004); *Pittsburgh Board of Education v. Workers' Compensation Appeal Board (Schulz)*, 840 A.2d 1078, 1081 (Pa. Cmwlth.), *appeal denied*, 857 A.2d 681 (Pa. 2004); *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty)*, 739 A.2d 1156, 1161 (Pa. Cmwlth. 1999). "Additionally, the mental injury must be related to the physical stimulus." *Murphy*, 110 A.3d at 234.

In other words, a claimant must prove that a physical work injury requiring medical treatment caused a psychological injury. *Murphy*, 110 A.3d at 234. However, "[a] claimant need not prove that he or she suffered a physical disability that caused a mental disability for which he or she may receive benefits. Nor must a claimant show that the physical injury continues during the life of the [mental] disability." *Id.* (quoting *Donovan,* 739 A.2d at 1161 (emphasis omitted)). Although the physical injury itself is not required to be disabling under the Act, its presence or lack thereof, and its relationship to the mental injury, is determinative to whether the physical-mental standard applies. *Murphy*, 110 A.3d at 237. Unlike under the mental-mental standard, under the physical-mental standard, a claimant is not required to show abnormal working conditions. *See Murphy*, 110 A.3d at 238;

9

*Anderson*, 862 A.2d at 683. The following cases illustrate how the courts have applied the physical-mental standard.

In *Anderson*, the physical stimulus was insufficient to support the application of the physical-mental standard. There, the claimant worked in a group home for mentally and physically challenged young adults and filed a claim petition alleging that she sustained a work-related mental injury as a result of, *inter alia*, a client "pulling at [her] hair and pulling at [her] blouse." *Anderson*, 862 A.2d at 681. The claimant argued that the physical-mental standard applied. On appeal, we disagreed. "[A]lthough there was some physical contact between [the c]laimant and her clients during the incidents . . . , she did not suffer any physical injury that required medical treatment." *Id.* at 685. Accordingly, this Court concluded that the matter was "more properly analyzed under the mental/mental standard." *Id.* We affirmed the denial of benefits because the claimant's exposure to combative behavior from mentally challenged clients did not constitute an abnormal working condition. *Id.* at 686.

In *Ryan*, the physical-mental standard did not apply because the physical stimulus did not cause the mental injury. There, the claimant was involved in a work-related automobile accident in which she sustained physical injuries that were accepted by her employer. More than a year after the accident, the claimant learned that the other driver, who had sustained severe injuries, filed a lawsuit against her. *Ryan*, 707 A.2d at 1132. Thereafter, the claimant began experiencing depression; she stopped working; and, she filed a petition for review to expand her accepted work-related physical injuries from the accident to include a work-related mental disability. *Id.* Our Supreme Court concluded that the claimant's mental injury was not caused by the work-related physical stimulus -- the accident -- but by

10

a psychological stimulus -- the lawsuit. *Id.* at 1134-35. Consequently, the physical-mental standard did not apply. *Id.* at 1135.

Conversely, in *Donovan*, the physical-mental standard did apply. There, the claimant, a janitor whose job duties did not include emptying medical waste, sustained a mental injury after being pricked twice in the hand by improperly disposed hypodermic needles in one of the medical offices that he cleaned. *Donovan*, 739 A.2d at 1159. The claimant received medical treatment in the form of blood work and booster shots. *Id.* The claimant became anxious and fearful of working in that particular office, and he experienced panic attacks, nausea, and nightmares, which caused him to seek psychiatric treatment. *Id.* The claimant filed a claim petition alleging he was disabled as a result of his mental injuries. *Id.* Applying the physical-mental standard, we determined that claimant established a compensable mental injury because "[t]he WCJ accepted as fact . . . that [the c]laimant had twice injured himself on hypodermic needles at work to the extent that he sought treatment." *Id.* His treatment included blood work and booster shots due to the concern regarding the transmission of disease from the used hypodermic needles. *Id.* And, "[the c]laimant's psychological illness was based directly on these physical injuries." *Id.*

Similarly, in *Schulz*, the claimant was hit on the head with a heavy object while performing his teaching duties, which caused his head to swell. The claimant sought treatment at a hospital, and he later developed a mental injury as a result of the physical injury. The WCJ awarded benefits under the physical-mental standard, and the Board affirmed. *Schulz*, 840 A.2d at 1079-80. On appeal to this Court, the employer argued that the physical-mental standard was not applicable because the triggering physical event was *de minimis* and the claimant was not

11

injured. *Id.* at 1081. We rejected the argument because the claimant was injured. Claimant was hit on the head; the side of his head swelled; and, he sought treatment for that injury at the hospital. *Id.* Thus, we concluded that the physical-mental standard was applicable under these circumstances and affirmed the award of benefits under this standard. *Id.*

Again, in *Bartholetti*, the physical-mental standard applied. There, the claimant, an elementary school teacher, intervened in an altercation between two students, was punched in the shoulder, and bitten on the arm. *Bartholetti*, 927 A.2d at 744. The claimant immediately went to the hospital, where a doctor confirmed she sustained a bite to her arm. *Id.* Blood tests were required to determine whether the claimant had contracted HIV or hepatitis. *Id.* The claimant attempted to return to work the next day, but was unable to work more than half a day, and she sought psychological treatment. *Id.* at 744. The claimant suffered from crying spells, anxiety, and depression, and experienced "flashbacks of the student fight she intervened in and in which a student bit her on the arm" and was "frightened to return to her school to work." *Id.* at 744-45. We concluded that substantial evidence supported the WCJ's finding that the claimant suffered a disabling mental injury "as a result of the physical injury she suffered at work" in the nature of a bite to her arm, and that "her disability was caused by a work injury." *Id.* at 747.

More recently, in *Murphy*, we applied the above analysis to a case in which the claimant asserted application of the physical-mental standard for her mental injury, which she sustained as a result of an armed robbery. The claimant worked as a general manager for a check cashing business when the store was robbed at gunpoint. The claimant alleged that she sustained a work-related mental PTSD injury. The claimant asserted that the physical-mental standard applied because she

12

sustained physical bruising to her wrists and ankles from being "hog-tied" during the robbery. *Murphy*, 110 A.3d at 238. The claimant testified that she went to the hospital for treatment because she "started getting chest pains and couldn't breathe or speak" and because "[s]he ha[d] high blood pressure." *Id.* She did not receive any treatment at the hospital other than oxygen and medication to calm her down. The WCJ categorized her physical injuries as "slight" and did not apply the physical-mental standard. *Id.* at 232. Instead, the WCJ applied the mental-mental standard and denied benefits. *Id.* at 233. On appeal, we concluded that slight bruising that requires no medical treatment is not the type of physical injury contemplated by *Ryan, Donovan, Schulz,* and *Bartholetti. Id.* at 238. Rather, it was more akin to the allegations that were found to be insufficient in *Anderson. Id.* Moreover, we opined that the claimant's PTSD was not the result of her physical injury or stimulus, i.e., the slight bruising to her wrists and ankles, but to the entire experience of the armed robbery itself. *Id.* Thus, we held that the physical-mental standard did not apply and the claimant was required to prove abnormal working conditions under the mental-mental standard. *Id.*

Applying the foregoing analysis here, Claimant did not establish that his mental injury resulted from a work-related, triggering physical stimulus. First, although Claimant experienced some symptoms immediately following his exposure, these symptoms were insufficient to support an application of the physical-mental standard. Similar to the bruise in *Murphy* or the physical contact in *Anderson*, the symptoms he experienced on the day of the incident were transient and quickly resolved.

More particularly, on the day of the incident, Claimant experienced vomiting, choking, runny nose, watery eyes, "sweating and shaking," throat pain,

13

abdominal pain and headache and received medical treatment for his symptoms following his exposure to work-related diesel fumes. However, his symptoms were transient and resolved before his discharge from the emergency room. R.R. at 177a-183a, 224a. According to the emergency room physician and nursing notes, there were no other pertinent positives on the review of Claimant's systems; his examinations and vital signs were normal. R.R. at 224a; *see also* R.R. 177a-192a. Indeed, the notes indicate that Claimant's head, face and eye exams were normal; conjunctivae was normal; neck, chest and axilla examinations were normal; cardiovascular examination was normal; respiratory examination was normal with no respiratory distress, normal symmetrical respirations, and normal clear breath sounds; abdominal examination was normal; neurologic examination was normal; and psychiatric examination was normal. R.R. at 224a; 182a-191a. His pulmonary results showed that Claimant had dyspnea/shortness of breath and cough while exercising, but not during rest. R.R. at 182a; 226a. The emergency room treated him with one liter of normal saline administered intravenously, 650 mg of Tylenol administered orally, and two doses of 4 mg of Ondansetron (an anti-nausea medication) administered intravenously. R.R. at 178a; 226a. His symptoms rapidly improved while in the emergency room, such that by the time of his discharge he was symptom-free. R.R. at 177a; 226a. His headache and nausea had resolved. R.R. at 177a; 226a. Claimant returned to work and continued to work that summer. R.R. at 218a.

Second, although Claimant reported a host of other, more persistent ailments following the incident, Claimant did not prove that they were work-related. Although Dr. Porter attributed Claimant's numerous physical symptoms and conditions to the work-related exposure, the WCJ rejected this evidence upon

14

finding that Dr. Porter did not offer a credible basis to support his opinion. F.F. No. 21. The WCJ relied instead upon the opinions of Drs. Greenberg and Cohn. F.F. No. 21.

Dr. Greenberg found no evidence of a causal relationship between the inhalation of fuel fumes on April 20, 2012, and any of Claimant's reported symptoms. Dr. Greenberg testified that it was "unlikely that he actually suffered any exposure at all. Rather, it is probable he merely perceived odors related to the chemical spill that occurred at a site distant from the site where he was working on the date at issue." C.R. at 1031. He explained that the presence of symptoms following a potential for exposure did not prove that any toxicant caused the symptoms. *Id.* Dr. Greenberg believed that the most likely diagnosis for Claimant's symptoms was anxiety/depression syndrome in the context of symptom magnification and pre-existing obstructive sleep apnea. R.R. at 228a; C.R. at 1035.

In addition, Dr. Cohn could not identify a work-related injury or condition because of any inhalation exposure. R.R. at 210a. Although Claimant went to the emergency room following the exposure, there were no objective findings of difficulty beyond nausea and headache; his symptoms resolved by the time he left the hospital. C.R. at 923-924. Dr. Cohn could not identify any specific medical treatment that was required as a result of the fuel exposure. R.R. at 211a. According to Dr. Cohn, Claimant did not require any medical treatment as the medical records established a mild, transient problem of nausea and dizziness possibly from fuel exposure. C.R. at 923-924. Based on the credited evidence, the WCJ found that Claimant did not prove that his exposure to the diesel fuel spill on April 20, 2012, caused any of his physical symptoms. F.F. Nos. 22, 23.

15

Moreover, even assuming that Claimant met his burden of proving a work-related physical injury, Claimant did not prove that his physical injury was the cause of his mental injury. *See Murphy*. Like the PTSD in *Murphy*, Claimant's mental injury appears related to the experience of the fuel exposure itself, not to any physical injury allegedly suffered because of that exposure. *See Murphy*. Consequently, the WCJ did not err in concluding that the physical-mental standard did not apply.[3] As a result, we are constrained to conclude that WCJ did not err in denying his Claim Petition.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

---

[3] In the absence of a physical triggering stimulus, the WCJ properly determined that Claimant was required to prove an abnormal working condition under the mental-mental standard. However, Claimant did not meet his burden under this standard. Claimant does not challenge the absence of an abnormal working condition on appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Frankiewicz, :
:
Petitioner :
:
v. : No. 20 C.D. 2017
:
Workers' Compensation Appeal :
Board (Kinder Morgan, Inc.), :
:
Respondent :

# O R D E R

AND NOW, this 14th day of November, 2017, the order of the Workers' Compensation Appeal Board, dated December 13, 2016, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge