IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald Walker,                            :
                    Petitioner            :
                                          :
          v.                              :
                                          :
Workers' Compensation Appeal Board        :
(Drexel University),                      :     No. 904 C.D. 2019
                    Respondent            :     Submitted: December 27, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED:  April 29, 2020


          Gerald Walker (Claimant) petitions for review of the June 20, 2019 order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of Workers' Compensation Judge Andrea McCormick (WCJ) reaffirming the WCJ's October 17, 2016 decision that granted Claimant's Claim Petition for Compensation Benefits (Claim Petition) filed against Drexel University (Employer) pursuant to the Workers' Compensation Act (Act),[1] awarding benefits from May 28, 2015 through August 13, 2015, and terminating Claimant's benefits thereafter.  We affirm.

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4 & 2501-2710.

On May 28, 2015, while working as a building maintenance worker for Employer, Claimant suffered an injury to his back lifting and carrying two five-gallon paint buckets up steps. WCJ Decision circulated October 17, 2016 (Original WCJ Decision) at 3, Findings of Fact (F.F.) 1-2. Claimant reported the incident to his superiors and filled out an incident report. Original WCJ Decision at 4, F.F. 4(c). Claimant, who had a history of lower back complaints and treatment, sought medical treatment, including an MRI, and was released to return to work on light duty. Original WCJ Decision at 4, F.F. 4(d). Ultimately, Claimant's medical providers released him to return to full-duty work. Original WCJ Decision at 4, F.F. 4(e).

On June 29, 2015, Claimant filed the Claim Petition claiming partial disability from May 28, 2015 through June 24, 2015, and continuing full disability from June 25, 2015 onward. *See* Claim Petition, Reproduced Record (R.R.) at 5a-10a; Board Opinion dated June 20, 2017 (Original Board Opinion) at 1. The Claim Petition alleged that, while carrying the buckets up the steps, Claimant suffered: annular tears at L3-L4, L4-L5, and L5-S1; aggravation and exacerbation of degenerative disc disease of the lumbar spine; and lumbar sprain and strain. Original Board Opinion at 1; Claim Petition, R.R. at 6a. Employer filed a timely Answer to Claim Petition (Answer) that denied all material allegations of the Claim Petition. *See* Original WCJ Decision at 3; Original Board Opinion at 1; Answer, R.R. at 11a-15a.

Claimant testified before the WCJ at a hearing conducted on July 30, 2015. *See* Original WCJ Decision at 3-5; *see also* Original Board Opinion at 2-3; July 30, 2015 Hearing Transcript, R.R. at 56a-90a. Claimant testified that he has worked for Employer for 17 years, the last 4 of which he has worked in

2

maintenance.[2]  *See* Original WCJ Decision at 3, F.F. 4(a); *see also* Original Board Opinion at 2.  Claimant explained that, on May 28, 2015, he was carrying two five-gallon paint buckets, each weighing in excess of 50 pounds, when he felt a pain in his back and along his right side with shooting pain down into his legs and feet.  *See* Original WCJ Decision at 4, F.F. 4(c); *see also* Original Board Opinion at 2.  Claimant explained that he reported the injury to his boss and completed an incident report.  *See* Original WCJ Decision at 3, F.F. 4(c); *see also* Original Board Opinion at 3.  Claimant testified that he reported to WorkNet Occupational Medicine (WorkNet), where he was seen several times and ultimately placed on light work duty, which he was able to perform.  *See* Original WCJ Decision at 4, F.F. 4(d)-(e); *see also* Original Board Opinion at 3.  Claimant explained that when WorkNet released him to full work duty, Employer took away the light-duty work.  *See* Original WCJ Decision at 4, F.F. 4(e); *see also* Original Board Opinion at 3.  Claimant testified that he has not returned to work in any capacity since June 25, 2015, although his physician, Jeffrey T. Truitt, M.D., has returned him to work in a modified capacity.  *See* Original WCJ Decision at 5, F.F. 4(h).

Claimant further testified that, over the past 10 years, he has had a history of lower back complaints and treatment with multiple medical providers.  *See* Original WCJ Decision at 4-5, F.F. 4(d) & 4(g); *see also* Original Board Opinion at 3.  Claimant conceded that he treated regularly for back problems in 2014 and 2015,

---

[2] Claimant explained that the job duties of a maintenance worker include a variety of tasks, including painting, plumbing, electrical work, furniture repair, and the installation of floor tiles and sheetrock.  *See* Original WCJ Decision at 3, F.F. 4(a); *see also* Original Board Opinion at 2. He further explained that the maintenance position required him to lift items up to 40 or 50 pounds, including toilets, paint buckets, floor tiles, ceiling tiles, and bunk beds and other furniture.  *See* Original WCJ Decision at 4, F.F. 4(b); *see also* Original Board Opinion at 2.  He would climb ladders and reach and bend as well.  *See* Original WCJ Decision at 4, F.F. 4(b).  Additionally, the performance of plumbing repairs would require him to squat, crouch, and crawl.  *Id.*

which treatment included epidural injections.  *See* Original WCJ Decision at 4-5, F.F. 4(g); *see also* Original Board Opinion at 3.  Claimant also explained that, for several weeks prior to May 28, 2015, he treated with Dr. Truitt, who prescribed medication and administered multiple epidural injections.  *See* Original WCJ Decision at 4-5, F.F. 4(d) & 4(g); *see also* Original Board Opinion at 3.  Claimant testified that, under Dr. Truitt's care, he was able to perform all his work duties.  *See* Original WCJ Decision at 4, F.F. 4(d).

Claimant also presented Dr. Truitt's deposition testimony.  *See* Original WCJ Decision at 5-6, F.F. 5; *see also* Original Board Opinion at 3-5; Truitt Deposition Transcript, R.R. at 106a-262a.  Dr. Truitt testified that he began treating Claimant on January 4, 2012, three years prior to the instant work injury, at which time Dr. Truitt diagnosed Claimant with lumbar degenerative disc disease with radiculopathy, cervical myofascial pain syndrome and chronic anti-coagulant treatment.  *See* Original WCJ Decision at 5, F.F. 5(a); *see also* Original Board Opinion at 3.  Dr. Truitt explained that Claimant's diagnoses remained unchanged from 2012 through the first half of 2014.  *See* Original WCJ Decision at 5, F.F. 5(a).  Dr. Truitt explained that in June 2014, Claimant's diagnosis was lumbar degenerative disc disease with radiculopathy, bilateral S1 radiculopathy, and peripheral neuropathy.  *See* Original WCJ Decision at 5, F.F. 5(a); *see also* Original Board Opinion at 3.

Dr. Truitt further testified that Claimant presented with complaints of lower back pain with definite burning pain in the lower extremities.  *See* Original WCJ Decision at 5, F.F. 5(b); *see also* Original Board Opinion at 4.  Dr. Truitt explained that Claimant maintained these complaints on May 5, 2015, a few weeks prior to the work injury.  *See* Original WCJ Decision at 5-6, F.F. 5(b); *see also*

4

Original Board Opinion at 4. Dr. Truitt testified that he next saw Claimant on June 8, 2015, at which time his diagnoses remained unchanged. *See* Original WCJ Decision at 6, F.F. 5(b). Additionally, Dr. Truitt testified that Claimant's June 2015 lumbar spine MRI showed annular tears at L3-L4, L4-L5, and L5-S1 that had previously not been present in a January 2014 MRI. *See* Original Board Opinion at 4.

In opposition to the Claim Petition, Employer presented the testimony of WorkNet physician Lawrence Axelrod, M.D. *See* Original WCJ Decision at 7, F.F. 11; *see also* Original Board Opinion at 5; Axelrod Deposition Transcript, R.R. at 263a-319a. Dr. Axelrod testified that Claimant received treatment in his office on May 28, 2015, and again on June 4, 2015, at which time Dr. Axelrod reviewed Claimant's diagnostic testing and conducted a physical examination. *See* Original WCJ Decision at 7, F.F. 11(a); *see also* Original Board Opinion at 5. Dr. Axelrod testified that Claimant's May 2015 lumbar spine MRI showed multiple degenerative disc changes and dehydration with annular tears between L3 and S1. *See* Original Board Opinion at 5. Dr. Axelrod testified that he concluded that Claimant had consistent and chronic complaints of pain for nine years preceding the work injury. *Id.* Dr. Axelrod diagnosed Claimant at that time with low back pain with possible radiculopathy, the existence of which predated the work injury. *Id.*

Dr. Axelrod further testified that a week later, on June 11, 2015, he performed an updated physical examination and reviewed an updated MRI of Claimant's lumbar spine. *See* Original WCJ Decision at 7, F.F. 11(b). Dr. Axelrod testified that the MRI displayed annular tears in the lumbar spine, which Dr. Axelrod described as degenerative changes. *Id.* Dr. Axelrod testified that the new MRI displayed no changes from the one he had previously reviewed. *Id.* Dr. Axelrod

5

explained that he next treated Claimant on July 1, 2015, and that Claimant had complained of incontinence. *Id.* Dr. Axelrod explained that he discharged Claimant to full work duty on July 1, 2015. *Id.*

Employer also presented the testimony of Dennis McHugh, D.O. *See* Original WCJ Decision at 7-8, F.F. 12; *see also* Original Board Opinion at 5-7; McHugh Deposition Transcript, R.R. at 320a-74a. Dr. McHugh, a board-certified orthopedic surgeon, testified that he conducted a physical examination of Claimant on August 13, 2015. *See* Original WCJ Decision at 7, F.F. 12(a); Original Board Opinion at 5. Dr. McHugh testified that he diagnosed Claimant as having suffered a lumbar strain on May 28, 2015. *See* Original WCJ Decision at 7, F.F. 12(a); Original Board Opinion at 6. However, Dr. McHugh further testified that Claimant had fully recovered from the work injury, and that any continuing complaints were the result of Claimant's preexisting back condition. *Id.* Dr. McHugh further testified that he reviewed Claimant's June 2015 MRI study, in which he noted no annular tears and instead, at most, minor disc bulges related to Claimant's preexisting back issues. *See* Original WCJ Decision at 8, F.F. 12(a).

The WCJ found the testimony of Employer's witnesses, Drs. Axelrod and McHugh, to be credible. *See* Original WCJ Decision at 8-9, F.F. 16. However, the WCJ found Claimant only partially credible to the extent Claimant testified that he suffered an injury to his lumbar spine while performing his work duties on May 28, 2015, but did not find Claimant credible regarding his injury and claimed disability. *See* Original WCJ Decision at 8, F.F. 14. Instead, the WCJ determined that Claimant had a documented, preexisting lower back condition/treatment in the weeks preceding the alleged work injury and that any ongoing disability after August 13, 2015 was related to Claimant's preexisting lumbar condition as opposed to the

6

May 28, 2015 work injury. *Id.* Likewise, the WCJ rejected the testimony of Claimant's treating physician, Dr. Truitt. *See* Original WCJ Decision at 8, F.F. 15. The WCJ found Dr. Truitt's testimony to be neither credible nor persuasive in light of Dr. Truitt's treatment records that documented Claimant's preexisting lumbar injury and treatment. *Id.*

The WCJ decided the Claim Petition by decision issued on October 17, 2016. *See* Original WCJ Decision. In the Original WCJ Decision, the WCJ found: (1) Claimant met his burden of proving that he sustained a lumbar sprain and strain on May 28, 2015, which did not aggravate any preexisting underlying condition of his lumbar spine; and (2) Claimant fully recovered from his work injury as of August 13, 2015. *See* Original WCJ Decision at 9; Original Board Opinion at 1. Accordingly, the WCJ awarded Claimant temporary total disability benefits for the period of May 28, 2015 through August 13, 2015, and terminated Claimant's benefits thereafter. *See* Original WCJ Decision at 10; Original Board Opinion at 1. Claimant appealed. *See* On-Line Appeal dated November 6, 2016.

The Board reviewed the Original WCJ Decision and determined that, in rendering her decision, the WCJ may have failed to consider that all three medical professionals noted that Claimant's post-injury May 30, 2015 MRI showed evidence of annular tears whereas the pre-injury, December 2014 MRI did not. *See* Original Board Opinion at 8-9. Accordingly, the Board remanded the matter for the WCJ to "once again consider the testimony of the medical experts regarding their interpretation of the MRI findings and then issue a determination as to the extent of Claimant's work injury and Claimant's continuing disability." Original Board Opinion at 10. The Board affirmed the Original WCJ Decision in all other respects. Original Board Opinion at 10.

7

Following the Board's remand, on March 23, 2018, the WCJ issued a second decision (WCJ Remand Decision), in which the WCJ explained that she had re-reviewed the testimony of the medical experts. *See* WCJ Remand Decision at 3, F.F. 5. The WCJ noted Dr. Truitt's deposition testimony that the annular tears visible on Claimant's May 30, 2015 MRI were work-related and consistent with traumatic injury. *See* WCJ Remand Decision at 3, F.F. 7. However, the WCJ noted that Dr. Truitt had not previously offered such an opinion in any of his multiple prior reports, which the WCJ explained instead supported Dr. Truitt's previous primary diagnosis of degenerative disc disease. *Id.*

The WCJ also found that both Drs. Axelrod and McHugh testified as to the differences in Claimant's MRI studies. *See* WCJ Remand Decision at 3, F.F. 5. The WCJ noted that Dr. Axelrod opined that the annular tears visible in the May 2015 MRI were degenerative in nature. *Id.* Further, the WCJ explained that Dr. Axelrod had testified credibly that the May 2015 MRI showed multi-level degenerative disc changes consistent with Claimant's previous MRI. *Id.* The WCJ also explained that her review of Dr. McHugh's testimony revealed that Dr. McHugh disagreed with Dr. Truitt's opinion that Claimant sustained work-related annular tears. *See* WCJ Remand Decision at 3, F.F. 6. The WCJ stated that Dr. McHugh opined that the suspect annular tears were degenerative in nature and not caused by the work injury. *Id.* Additionally, the WCJ explained that Dr. McHugh indicated that Claimant's spinal stenosis preexisted the work injury and was in existence since at least 2011. *Id.* The WCJ explained that Dr. McHugh testified that Claimant did not suffer any change in his back as a result of the May 28, 2015 work injury. *Id.*

As in the Original WCJ Decision, the WCJ rejected Dr. Truitt's testimony, expressly finding it "neither credible nor convincing." WCJ Remand

8

Decision at 3, F.F. 7. Alternatively, the WCJ once more found Drs. Axelrod and McHugh to be more credible than Dr. Truitt. *See* WCJ Remand Decision at 3-4, F.F. 5-8. Accordingly, the WCJ reaffirmed the Original WCJ Decision. *See* WCJ Remand Decision at 3-5, F.F. 8 & Order.

Claimant again appealed, alleging that the WCJ capriciously disregarded substantial evidence and failed to render a reasoned decision because the WCJ accepted the opinions of Employer's medical experts. *See* On-Line Appeal dated April 12, 2018. Additionally, on October 12, 2018, Claimant filed a Motion to Amend Appeal in which Claimant alleged ongoing misconduct and bias on the part of the WCJ against Claimant and Claimant's counsel. *See* Motion to Amend Appeal. In response, Employer moved to quash Claimant's Motion to Amend Appeal as untimely filed. *See* Motion to Quash.

The Board affirmed the Remand WCJ Decision by opinion dated June 20, 2019 (Board Remand Opinion). *See generally* Board Remand Opinion. As the Board explained:

> On remand, the WCJ again rejected Dr. Truitt's opinion as to the extent of the work injury and disability, again observing that Dr. Truitt's diagnoses and Claimant's complaints are consistent before and after the work injury, and that in contrast to his deposition testimony, Dr. Truitt's records do not place any significance on the annular tears. Claimant has the burden of proving an injury and disability. Because the WCJ rejected Dr. Truitt's opinion, Claimant could not meet his burden in support of a more extensive description of injury or ongoing disability.

Board Remand Opinion at 7. The Board also granted Employer's Motion to Quash Claimant's Motion to Amend Appeal as untimely. *See* Board Remand Opinion at 3. Claimant timely petitioned this Court for review.[3]

Claimant alleges that the Board erred in affirming the WCJ for four reasons: (1) the WCJ "fabricated" a nonexistent opinion of Dr. Axelrod; (2) the WCJ based her determination on an MRI report that was contradicted by the experts; (3) the WCJ did not explain why she accepted Dr. McHugh's opinion that the lumbar spine annular tears were not caused by the work injury; and (4) the Board improperly quashed Claimant's Motion to Amend Appeal that was filed only 12 days after the WCJ was removed as a workers' compensation judge. *See* Claimant's Brief at 3.

Initially, we note that "[w]ith respect to a claim petition, the claimant bears the initial burden of proving that [an] injury arose in the course of employment and was related thereto." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017). "Moreover, the claimant not only must prove that she has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition

---

[3] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

10

proceeding." *Milner v. Workers' Comp. Appeal Bd. (Main Line Endoscopy Ctr.)*, 995 A.2d 492, 496 (Pa. Cmwlth. 2010). "If the WCJ feels that the evidence supports a finding of disability only for a closed period, she is free to make such a finding." *Id.* "Generally, if there is no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet this burden of proof." *Frankiewicz*, 177 A.3d at 995. "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002). Further, as this Court has previously noted:

> [t]he WCJ is the fact finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *appeal denied*, 173 A.3d 252 (Pa. 2017) (internal citations, quotations, and brackets omitted).

Claimant's first claim, that the WCJ "fabricated" Dr. Axelrod's opinion that the annular tears evidenced on Claimant's May 2015 MRI were degenerative in nature is belied by the record. *See* Claimant's Brief at 20-21. In discussing the updated May 2015 MRI study, Dr. Axelrod testified:

[The May 30, 2015 lumbar spine MRI] reported multiple-level degenerative disc changes with dehydration.

There were annular tears between L3 and S1. There were osteophyte complexes at L4-[L]5 and a compressed fecal sac with moderate facet overgrowth.

These are, you know, again some degenerative changes with thickening of the ligamentum flavum which is a ligament that's on the posterior aspect of the lumbar spine. And this resulted in minor central canal and moderate right-sided narrowing.

At L5-S1, there was another disc osteophyte complex. So [Claimant] had his chronic complaints of pain with these MRI abnormalities.

[I] reviewed [Claimant's] previous lumbar spine MRI reports. And they also documented that these were not any significant new changes. But rather, these were changes also evident on his previous MRI from 2011.

Axelrod Deposition Transcript at 17-18. Based on this testimony, the WCJ found Dr. Axelrod had opined that Claimant's annular tears were degenerative in nature. WCJ Remand Decision at 3, F.F. 5. On review, the Board stated:

We do not agree that the WCJ blatantly mischaracterized Dr. Axelrod's testimony on direct examination. Dr. Axelrod stated that there were multiple-level degenerative disc changes with dehydration, annular tears between L3 and S1, osteophyte complexes at L4-[L]5 and a compressed thecal [sic] sac with moderate facet overgrowth, and a disc osteophyte complex at L5-S1. He did not expressly state "degenerative annular tears"; nevertheless, his testimony is readily susceptible to that interpretation.

12

Board Remand Opinion at 7-8. Upon review of the record, we find no error in the Board's assessment of the WCJ's finding of fact.

A review of Dr. Axelrod's deposition testimony reveals that his testimony regarding the results of a May 30, 2015 MRI was prefaced by a general statement that said MRI revealed "multiple-level degenerative disc changes." Axelrod Deposition Transcript at 17. Dr. Axelrod then appeared to specify these changes, which included annular tears between L3 and S1, as well as osteophyte complexes at L4-L5 and L5-S1 and a compressed fecal sac with moderate facet overgrowth. *Id.* at 18. A reasonable interpretation of Dr. Axelrod's testimony is that he identified these conditions, including the annular tears, as degenerative disc changes. Claimant's argument that the WCJ erred by fabricating Dr. Axelrod's testimony regarding the degenerative nature of Claimant's annular tears lacks merit.

Next, Claimant alleges the WCJ Remand Decision was not "reasoned" because it was based on the June 26, 2015 MRI report, which Claimant alleges was contradicted by all the experts' testimony. *See* Claimant's Brief at 21-22. We disagree.

Regarding reasoned WCJ decisions, Section 422(a) of the Act provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons

13

for rejecting or discrediting competent evidence. . . . The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. As our Supreme Court has explained:

[A] decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less.

*Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003).

Here, contrary to Claimant's suggestion, the June 26, 2015 MRI was not the sole basis for the WCJ's determination on remand. In fact, on remand the WCJ found Drs. Axelrod and McHugh more credible than Claimant's medical expert for multiple reasons. *See* WCJ Remand Decision at 3-4, F.F. 5-8. The WCJ noted that both Dr. Axelrod and Dr. McHugh opined that the annular tears were degenerative in nature, which contrasted with Dr. Truitt's opinion that the annular tears were consistent with traumatic injury. *See* WCJ Remand Decision at 3, F.F. 5-7. The WCJ also noted the apparent diagnostic inconsistencies between Dr. Truitt's deposition opinion and his multiple medical reports, which provided a primary diagnosis of degenerative disc disease for Claimant's lumbar spine issues. *See* WCJ Remand Decision at 3, F.F. 7. Ultimately, the WCJ found Employer's medical experts to be more convincing than Claimant's expert. The WCJ explained:

Consistent with my earlier opinion, this Judge finds that Claimant had a significant back condition that pre-existed the work injury, and that is supported by the medical evidence of record. While there is a dispute between

14

medical experts as to whether or not the annular tears are degenerative in nature or traumatic, this Judge found the testimony of the defense experts more credible on that issue where the annular tears were not seen on a subsequent MRI study performed in June 2015 and where Dr. Truitt's reports underscored his opinion that Claimant's main diagnosis was degenerative changes despite his testimony to the contrary for purposes of litigation.

WCJ Remand Decision at 3-4, F.F. 8. Clearly, the WCJ did not base the WCJ Remand Decision solely on the June 26, 2015 MRI, and we decline to upset the WCJ's evidentiary weight determinations. *See Hawbaker*. Further, because the WCJ Remand Decision adequately expresses the reasons for the WCJ's evidentiary determinations, we are able to conduct adequate review. Therefore, Claimant's claim that the WCJ Remand Decision is not reasoned fails. *See Daniels*, 828 A.2d at 1052.

Additionally, the fact that Dr. McHugh reviewed MRI reports and not the actual MRI images is of no moment. Medical witnesses may express an opinion based upon records that are of the kind on which the medical professional customarily relies in the practice of their profession. *See Empire Steel Castings, Inc. v. Workers' Comp. Appeal Bd. (Cruceta)*, 749 A.2d 1021, 1026 (Pa. Cmwlth. 2000). MRI reports represent such records. *See*, *e.g.*, *Smith v. Workers' Comp. Appeal Bd. (HealthSouth of Mechanicsburg, Inc.)* (Pa. Cmwlth., No. 2710 C.D. 2015, filed Aug. 5, 2016),[4] slip op. at 3-7 (discussing a physician's review of MRI reports as part of a medical record review for purpose of diagnosis).

---

[4] Pursuant to Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court, issued after January 15, 2008, may be cited for their persuasive value.

15

Thirdly, Claimant alleges the WCJ erred by failing to explain the acceptance of Dr. McHugh's opinion that the annular tears were degenerative in nature. *See* Claimant's Brief at 22-24. This argument lacks merit.

During his deposition testimony, Dr. McHugh provided the following explanation of Claimant's annular tears:

> Q. Doctor, that fact that we see annular tears in the May MRI, does that mean those annular tears are work-related, Doctor?
>
> A. No, it does not.
>
> Q. What do you attribute those annular tears to?
>
> A. I attribute – genetically speaking this gentleman has [a] predisposition for chronic degenerative findings in his back. It is due to the chronic degenerative issues.

McHugh Deposition Transcript at 67. The WCJ credited Dr. McHugh's testimony over that of Dr. Truitt on the question of whether the annular tears were the result of trauma or degenerative issues. *See* WCJ Remand Decision at 3-4, F.F. 8. Claimant's disagreement with the conclusions the WCJ reached upon reviewing the evidence does not render those conclusions unreasoned.

Finally, Claimant alleges the Board erred by quashing his Motion to Amend Appeal. *See* Claimant's Brief at 24-26. We disagree.

Section 423(a) of the Act allows a party to appeal an adverse WCJ adjudication within 20 days as follows:

> Any party in interest may, within twenty days after notice of a workers' compensation judge's adjudication shall have been served upon him, take an appeal to the board on the ground: (1) that the adjudication is not in conformity with the terms of this act, or that the workers'

16

compensation judge committed any other error of law; (2) that the findings of fact and adjudication was unwarranted by sufficient, competent evidence or was procured by fraud, coercion, or other improper conduct of any party in interest. The board may, upon cause shown, extend the time provided in this article for taking such appeal or for the filing of an answer or other pleading.

77 P.S. § 853 (footnote omitted). The 20-day time limitation is jurisdictional in nature, non-discretionary, and must be strictly enforced. *Manolovich v. Workers' Comp. Appeal Bd. (Kay Jewelers, Inc.)*, 694 A.2d 405, 409 (Pa. Cmwlth. 1997).

Here, the WCJ issued the WCJ Remand Decision on March 23, 2018. Thus, Claimant had until April 12, 2018 to timely file an appeal, including Claimant's claim that the WCJ Remand Decision resulted from the WCJ's bias against Claimant and Claimant's counsel. Claimant did not file his Motion to Amend Appeal until October 12, 2018. Based on this timeline, the Board determined it lacked jurisdiction to consider the arguments contained in the Motion to Amend Appeal and granted Employer's Motion to Quash. *See* Board Remand Opinion at 3.

We agree that the Board lacked jurisdiction to consider Claimant's bias/misconduct claim. While the WCJ's termination did not occur until October 1, 2018, Claimant could have raised a bias claim on appeal regardless of the WCJ's employment status. He made no such claim, however, until he filed his Motion to Amend Appeal on October 12, 2018, half a year after the expiration of the statutory appeal deadline. Accordingly, the Board lacked jurisdiction to address such a claim and properly quashed Claimant's Motion to Amend Appeal.

For the foregoing reasons, the Board's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald Walker,                                    :
               Petitioner          :
                                    :
            v.                              :
                                    :
Workers' Compensation Appeal Board   :
(Drexel University),                             :   No. 904 C.D. 2019
               Respondent          :

## O R D E R

AND NOW, this 29th day of April, 2020, the June 20, 2019 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge