508 A.2d 388

Commonwealth of Pennsylvania, Bureau of Worker's Compensation, Petitioner *v.* Workmen's Compensation Appeal Board (Allstate Insurance Company), Respondent.

Submitted on briefs December 12, 1985, to Judges MACPHAIL and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Thomas D. Gould,* Acting Deputy Chief Counsel, for petitioner.

*Thomas R. Bond, LaBrum & Doak,* for respondents.

OPINION BY JUDGE MACPHAIL, April 25, 1986:

The Department of Labor and Industry (Department) appeals from an order of the Workmen's Compensation Appeal Board (Board) permitting Allstate Insurance Company (Respondent) to receive reimbursement from the Supersedeas Fund (Fund) pursuant to Section 443 of The Pennsylvania Workmen's Compensation Act (Act).[1] We will affirm.

The procedural history of this case is rather complex. On October 31, 1972, Joann F. Jarasitz (Claimant) suffered a work-related injury for which Respondent made partial disability payments pursuant to a notice of compensation payable. On April 19, 1973, Claimant and her employer, Airport Services, Inc., entered into a

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. §999. Section 443(c) of the Act, 77 P.S. 999(c) states in relevant part:

The Secretary of Labor and Industry shall be the administrator of the fund and shall have the power to dispense and disburse moneys from the fund for the purpose of payments made pursuant to this section. All moneys in the fund as are required to carry out the purposes of this section are hereby specifically appropriated to the Department of Labor and Industry.

supplemental agreement suspending benefits because Claimant had returned to employment with no loss of earning power. On August 28, 1973, a further supplemental agreement was entered into under which compensation was resumed for an indefinite period owing to the fact that Claimant again became partially disabled as a result of the original work-related injury. On December 1, 1975, Respondent filed a petition to terminate workmen's compensation benefits. On February 27, 1976, Respondent also filed a petition alleging that the supplemental agreement of August 28, 1973 was incorrect in a material respect in that any disability Claimant was then suffering was owing to a preexisting condition not related to her employment.

Hearings on both petitions were held on July 13, 1976 before a referee, at which time Respondent orally requested a supersedeas. The referee denied that request and ordered Respondent to continue making payments to Claimant "pending final determination of Defendant's Termination Petition." Thereafter, on May 20, 1977, the referee issued a decision suspending Claimant's benefits effective February 11, 1974. Claimant appealed and the Board remanded the case to the referee for further findings on the question of job availability. On May 29, 1981, the referee, on the basis of stipulations of the parties,[2] again suspended benefits. No appeal was taken from that order.

--------

[2] The relevant stipulation states:

4. That as of February 14, 1974 any reduction in earning power on the part of the Claimant was not due to her work-related injury but, rather due to the fact that she had been discharged from the employment of Airport Services, Inc. for reasons not related to her compensable injuries and, further, because since August 7, 1973, [Claimant] had not sought any form of gainful employment within the relevant labor market.

Respondent subsequently filed an application for reimbursement from the Fund. In a decision of March 2, 1983, the referee ordered that Respondent be reimbursed from the Fund for payments of $50.67 per week from July 13, 1976 to April 9, 1981, for a total amount of $12,529.97.[3] The Board affirmed the referee's decision and this appeal followed.

The Department contends that reimbursement should be denied inasmuch as the referee erred in his decision of May 29, 1981, in which he again suspended benefits. The Department alleges that the decision was based upon unsubstantiated stipulations of the parties and, therefore, is somehow suspect. We must reject the Department's contention because the correctness or "the validity of the underlying decision on the termination petition is not before us for review.... [T]he only issue properly before us is whether the referee and the Board correctly calculated the reimbursement due based on the referee's unappealed order in the termination proceeding." *Department of Labor and Industry v. Workmen's Compensation Appeal Board (Bethlehem Mines Corporation)*, 79 Pa. Commonwealth Ct. 290, 294-95, 469 A.2d 705, 708 (1984).

The Department next contends that Respondent is not entitled to reimbursement after the referee's decision suspending compensation on May 20, 1977, because at that point Respondent was no longer bound to pay Claimant benefits. Section 443(a) of the Act, 77 P.S. §999(a), provides in pertinent part:

---

[3] The Department implies the referee erred in calculating this amount, alleging the Respondent stopped paying Claimant in early 1977 and only reinstated payments in early 1978. Because this issue was not raised below, it must be considered to have been waived. *Bethlehem Mines Corporation v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 454, 402 A.2d 718 (1979). Furthermore, our careful review of the record satisfies us that the referee's computation is supported by the evidence.

· If, in any case in which a supersedeas has been requested and denied ... payments of compensation are made as a result thereof and *upon the final outcome of the proceedings,* it is determined that such compensation was not, in fact, payable, the insurer who made such payments shall be reimbursed therefor. (Emphasis added.)

The issue presented to us is, at what point is there a "final outcome of the proceedings" for the purposes of the application of Section 443(a) of the Act? The Department, charged with the maintenance and conservation of the Fund,[4] contends that when the referee initially ordered the suspension of benefits, Respondent was thereby relieved of its duty to pay because its petition to terminate had been decided in its favor. The Respondent, of course, argues that until the referee acted pursuant to the Board's remand order and no appeal was taken therefrom, the proceedings were not final.

The obvious purpose of the Fund is to provide a means to protect an insurer who makes compensation payments to a claimant who ultimately is determined not to be entitled thereto. The Legislature recognized that recoupment from the claimant was impractical and would undermine the benevolent purposes of the Act.

· We again observe that the referee's order of May 20, 1977 was appealed by the Claimant and subsequently vacated by the Board. Once the appeal was taken to the Board, the referee's order was no longer "final". We are of the opinion that the effect of the order by the Board vacating the referee's order and remanding the case to the referee for further findings was to reinstate the notice of compensation payable and obligated Respondent to continue making payments pursuant thereto.

The Department then would have us hold that Respondent was under a duty to seek a second supersede-

---

[4] *See* Section 443(b) of the Act, 77 P.S. §999(b).

as following the Board's remand order. That would be true if that action would constitute a new "proceeding" but we view the Board's remand order as a mere continuation of the Respondent's original proceeding to terminate the payment of benefits. The Act does not require the Respondent to request a second supersedeas under these circumstances.

In summary, we do not believe that there was a final outcome of this proceeding until the referee's order of May 29, 1981 was entered and no appeal was taken therefrom.

We agree with the Department that the result here seems unfair. The Claimant has received a substantial sum of money to which she was not entitled and the Respondent is made whole at the expense of other contributors to the Fund. If the Fund is being abused it is the province of the legislature, not this Court, to enact corrective legislation.

The Department alternatively contends that because Claimant and Respondent entered into a supplemental agreement on April 10, 1981, under which Respondent agreed to pay Claimant for the loss of use of her right index finger, the amount payable by the terms of the agreement should be deducted from the amount found to be due Respondent from the Fund by the referee and the Board. The agreement in question provides in part:

> All disability the claimant suffered as a result of injuries to her right second finger, right knee and jaw which occurred on October 31, 1972 ceased and terminated with the injury she sustained to her right index finger on the same date resolving itself into a loss for all practical intents and purposes compensable under Sec. 306(c)(10) of the Workmen's Compensation Act.

572

The agreement further states that Respondent will pay Claimant payments of $50.67 per week for fifty weeks as compensation for Claimant's loss of use of her right index finger.

As we have previously noted, the purpose of the Fund is to reimburse insurers and employers who have paid compensation to workers where it later is determined that such payments were, in fact, not due. *Department of Labor and Industry v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. 265, 383 A.2d 261 (1978). Respondent is not seeking reimbursement for monies payable under the supplemental agreement. Those monies *are* due Claimant. We fail to see how such sums could be credited against the amount due Respondent from the Fund. Respondent is therefore not required to have the amount paid by way of the supplemental agreement subtracted from the total amount of reimbursement as determined by the referee and the Board.

Order affirmed.

ORDER

The Workmen's Compensation Appeal Board order No. A-85740, dated October 11, 1984, is affirmed.