# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The School District of Philadelphia,  :
                 Petitioner  :
                                   :
       v.                      :  No. 1113 C.D. 2022
                                   :
Shahyra Smith (Workers'        :
Compensation Appeal Board),   :
                 Respondent  :  Submitted: June 5, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: August 22, 2023

The School District of Philadelphia (Employer) petitions this Court for review of the September 16, 2022 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) that granted claim and penalty petitions filed by Shahyra Smith (Claimant). Employer argues that the WCJ and the Board applied the wrong standard in concluding that Claimant suffered a mental injury caused by a physical injury Claimant sustained in the course and scope of her employment. Employer also argues that Claimant voluntarily left employment and was not entitled to an award of ongoing total disability benefits, and that Claimant was not entitled to penalties under Section 435(d) of the Workers' Compensation Act (Act).[1] After review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d). Section 435(d) relevantly provides that penalties may be imposed when an employer or insurer violates any provisions of the Act or the Board's rules and regulations.

## I. Background

Claimant sustained a work injury on May 28, 2019, in the course of her employment as a special education teaching assistant when a student struck her in the abdomen. Certified Record (C.R.), Item No. 26, Claimant Deposition at 5, 9. Claimant was eight months pregnant at the time. *Id.* at 10. On June 17, 2019, Claimant filed a claim petition seeking total disability benefits from May 29, 2019, and ongoing, alleging that she sustained an abdominal contusion and a psychological injury as a result of the May 28, 2019 work injury. C.R., Item No. 2. Employer admitted that Claimant sustained an abdominal contusion on May 28, 2019, but denied that Claimant subsequently developed a psychological injury. C.R., Item No. 4. On June 14, 2019, Employer issued a Notice of Compensation Denial (NCD), accepting liability for a right-side abdominal muscle strain, but otherwise disputing the extent of Claimant's disability. C.R., Item No. 24.

In support of her claim petition, Claimant testified by deposition on December 23, 2019, and presented the deposition testimony of her psychoanalyst, Anthony Tereo, Ph.D. Employer presented the deposition testimony of Burton Weiss, M.D., who conducted an independent medical examination (IME) of Claimant on November 11, 2019.

### A. Claimant's Evidence

Claimant testified that she began working for Employer at the John F. Hartranft School in April 2019. C.R., Item No. 26, Claimant Deposition at 5, 35. Claimant's duties included helping children with reading and writing. *Id.* at 6. On May 28, 2019, as Claimant ate her lunch, one of Claimant's students approached her and indicated he wanted some of her food. *Id.* at 7. Claimant said no and asked the

2

student to move back. *Id.* at 7-8. The student moved his chair closer and grabbed Claimant's shoulder. *Id.* at 9. Claimant put her food down, at which time the student scratched and punched Claimant in the stomach. *Id.* Claimant went to the school nurse, who advised Claimant to see her obstetrician (OB). *Id.* at 10-11. Claimant's OB monitored her for four hours due to concerns that her placenta could rupture. *Id.* at 11. Claimant was released with instructions to take Tylenol for pain. C.R., Item No. 25. Although the results of monitoring indicated that Claimant's unborn child was fine, Claimant believed that she was hit "way too hard" and she expected that "something was going to happen to [her] or [her] child." C.R., Item No. 26, Claimant Deposition at 14. Claimant was monitored at subsequent appointments with her OB due to continued pain from the May 28, 2019 work injury. *Id.* at 29. She did not return to work after May 28, 2019. *Id.* at 15. At a follow-up appointment, Claimant's OB advised her to take maternity leave and not return to work. *Id.* at 12.

On June 7, 2019, Claimant was evaluated by a physician at Worknet, who diagnosed Claimant with an abdominal contusion. *Id.* at 23. Claimant stated that the issue of her returning to work did not come up, as school was no longer in session and she did not work for Employer during the summer. *Id.*

Prior to the May 28, 2019 work injury, Claimant's OB had not restricted her from working. *Id.* at 13. Claimant delivered her child on August 15, 2019. *Id.* at 15. Although the remainder of Claimant's pregnancy progressed normally, she hemorrhaged during delivery, which Claimant attributed to the May 28, 2019 work injury. *Id.* at 14. Claimant acknowledged that she has physically recovered from the May 28, 2019 work injury; however, she does not feel capable of returning to her job because Employer failed to protect her despite knowing that the student who

3

hit her "had issues with hitting people[.]" *Id.* at 15. Claimant advised that the same student had scratched her once before on the hand. *Id.* at 33.

Claimant related that she began having nightmares, that she sometimes hears the student's voice in her head, and that she feels a "desperate need to protect her child[.]" *Id.* at 16-17. Claimant agreed that she was treated for depression and anxiety in December 2018. *Id.* at 25.

Dr. Tereo testified that he first met with Claimant on June 24, 2019. C.R., Item No. 27, Tereo Deposition at 11. Claimant advised that she suffered from anxiety and lack of sleep and that she experienced flashbacks from the May 28, 2019 work injury. *Id.* at 12. Dr. Tereo opined that Claimant met the following criteria for a diagnosis of post-traumatic stress disorder (PTSD): (1) exposure to actual or threatened death, serious injury, or sexual violence; (2) the presence of intrusive symptoms associated with the traumatic event, such as recurrent involuntary and distressing memories thereof; (3) persistent avoidance of the stimuli associated with the event; (4) negative alterations in cognition and mood associated with the traumatic event; (5) marked alterations in arousal and reactivity associated with the traumatic event; (6) duration of the disturbance exceeding one month; (7) clinically significant distress or impairment in social, occupational, or other important areas of functioning; and (8) the disturbance is not attributable to the physiological effects of a substance or other medical condition. *Id.*, Ex. C-2. Dr. Tereo felt that Claimant met the first criterion, having directly experienced an event that exposed her to a threat of serious injury. C.R., Tereo Deposition at 13. Claimant met the second criterion, as she continued to have nightmares and flashbacks associated with the May 28, 2019 work injury. *Id.* at 13-14. Claimant's unwillingness to return to her pre-injury job with Employer fulfilled the third criterion. *Id.* at 14. Dr. Tereo stated

4

that Claimant described herself as an individual who previously exercised and engaged in other activities, all of which had been discontinued following the May 28, 2019 work injury. *Id.* at 15. This behavior fulfilled the fifth criterion. *Id.* Claimant's persistent negative and hypervigilant emotional state fulfilled the sixth criterion. *Id.* As for the seventh criterion, Claimant's symptoms persisted for more than one month. *Id.* at 16. Finally, Dr. Tereo did not attribute Claimant's symptoms to the physiological effects of a substance or other medical condition. *Id.* at 16-17. Ultimately, Dr. Tereo diagnosed Claimant with PTSD as a result of the May 28, 2019 work injury. *Id.* at 25.

Dr. Tereo advised that he continues to meet with Claimant on a weekly basis. *Id.* at 18. Claimant has indicated that her symptoms persist, although they have improved. *Id.* Dr. Tereo understood that Claimant previously suffered from PTSD as the result of an automobile accident that occurred when she was six or seven and due to physical abuse perpetuated by her father. *Id.* at 19-20. He felt that this history made Claimant more susceptible to having an intense reaction to the May 28, 2019 work injury. *Id.* at 20. Although Claimant was improving, Dr. Tereo estimated that she continued to require treatment. *Id.* at 20-21. While Dr. Tereo agreed that Claimant was physically capable of performing her pre-injury job, he did not believe Claimant was psychologically capable of returning to that position. *Id.* at 26, 28. During cross-examination, Dr. Tereo acknowledged that he had not reviewed any of Claimant's medical records from Worknet or from her OB, but he understood that Claimant suffered from depression and anxiety in the past. *Id.* at 32, 34.

5

## B. Employer's Evidence

Dr. Weiss, a licensed psychiatrist, conducted an IME of Claimant on November 11, 2019. C.R., Item No. 35, Weiss Deposition, at 6, 9. Claimant advised Dr. Weiss that she was in significant pain following the May 28, 2019 work injury. *Id.* at 11. Despite monitoring that found no evidence of placental rupture, Claimant felt "there must be more wrong" and she worried about the safety of her unborn child and her delivery throughout the remainder of her pregnancy. *Id.* Claimant had nightmares in which she relived the May 28, 2019 work injury. *Id.* Initially, these nightmares occurred every two or three nights but over time they became less frequent. *Id.* Claimant also experienced flashback episodes several times each day. *Id.* at 12. Claimant began sleeping on her sofa out of fear that someone might break into her house. *Id.* Claimant continued to sleep on the sofa after delivering her daughter, who slept next to her in a bassinet. *Id.* She described the delivery as very painful and frightening, as she hemorrhaged afterwards. *Id.* at 12-13.

Claimant related that she was diagnosed with PTSD following a motor vehicle accident that occurred when she was six. *Id.* at 15. Claimant stated that the anxiety she felt then was similar to the anxiety she experienced after the May 28, 2019 work injury. *Id.* at 16. At the time of Dr. Weiss's examination, Claimant indicated that the flashbacks occurred "much less frequently," and the nightmares had subsided, although Claimant had difficulty falling and remaining asleep. *Id.* at 13-14. Claimant's therapy treatments with Dr. Tereo were helping her symptoms; however, Claimant did not wish to return to her pre-injury position out of fear that the student would attack her again. *Id.* Claimant expressed interest in working in a different position that did not require any contact with aggressive students. *Id.* at 14-15.

Dr. Weiss diagnosed Claimant with PTSD, which had improved and was "almost resolved[.]" *Id.* at 23. Dr. Weiss also believed that Claimant suffered from mild post-partum depression, which did not interfere with her ability to function. *Id.* at 23-24. Although Claimant did not exhibit certain symptoms required for a diagnosis of PTSD, and, therefore, did not technically meet the criteria for PTSD, Dr. Weiss "[felt] that she did have it[.]" *Id.* at 24. Dr. Weiss concluded that Claimant could return to light-duty work that did not involve contact with aggressive students. *Id.* Dr. Weiss did not feel that Claimant's reasons for not returning to work related to her PTSD; rather, Claimant made her decision "based on her assessment of the dangers of the job."

Employer also presented an Employee Verification of Employment form, LIBC-760, that it sent to Claimant on September 12, 2019, seeking information about her employment status. C.R., Item No. 31. While the LIBC-760 indicates that it must be returned to the sender within 30 days of receipt, Claimant did not provide the completed form until February 20, 2020. *Id.* The LIBC-760 further indicates that failure to return the form within 30 days may result in a suspension of workers' compensation benefits. *Id.* Because Claimant failed to return the LIBC-760 within 30 days of September 12, 2019, Employer issued a Notice of Suspension on November 12, 2019. C.R., Item No. 22, WCJ Hearing Transcript, 9/16/2020, at 15.

### C. WCJ Decision

The WCJ circulated a decision on December 9, 2020, granting the claim petition. He found that Claimant's testimony regarding the emotional impact of the May 28, 2019 work injury, and the onset of her psychological symptoms, was credible and persuasive. C.R., Item No. 7, WCJ Decision, Finding of Fact (F.F.) No. 6. The WCJ gave greater deference and weight to the opinions of Dr. Weiss, as a

7

licensed psychiatrist, regarding Claimant's current condition and work capabilities, which restricted Claimant to light-duty work and no contact with aggressive students. F.F. No. 7. The WCJ found that the description of Claimant's work injury "must be amended to include [PTSD,]" which resulted in a loss of earning power. F.F. Nos. 9-10. The WCJ applied the "physical/mental" standard to Claimant's claim petition, which required that Claimant establish her mental injury resulted from a physical injury sustained in the course of her employment. F.F. No. 15. Because Employer failed to show that work was available within Dr. Weiss's restrictions, the WCJ awarded Claimant total disability benefits from May 28, 2019, and ongoing. Conclusion of Law (C.L.) No. 7.

Employer appealed to the Board, arguing that the WCJ's findings ignored Dr. Weiss's testimony that Claimant did not meet the criteria for PTSD as of the November 11, 2019 IME and that Claimant's refusal to return to work was a personal decision. C.R., Item No. 8. Additionally, Employer argued that the WCJ failed to explain his basis for applying the physical/mental standard instead of the mental/mental standard[2] to Claimant's claim petition, and that the WCJ erred in awarding ongoing benefits, given that Claimant failed to return the LIBC-760 within 30 days, after which Employer issued the September 12, 2019 Notice of Suspension. *Id.*

The Board agreed with Employer that the WCJ failed to explain his reasons for accepting the physical/mental standard over the mental/mental standard. As a result, the Board remanded the matter to the WCJ to clarify his reasons for applying the physical/mental standard and to render findings of fact establishing that Claimant

---

[2] The mental/mental standard applies in matters in which a psychological stimulus at work causes a disabling mental injury. *Ryan v. Workmen's Comp. Appeal Bd. (Cmty. Health Servs.)*, 707 A.2d 1130, 1134 (Pa. 1998).

met the standard. Additionally, the Board directed that the WCJ address Dr. Weiss's testimony that, as of the November 11, 2019 IME, Claimant no longer met the criteria for PTSD, and address Claimant's right to continuous benefits, in light of the untimely LIBC-760 and the Notice of Suspension issued on September 12, 2019.

## D. Remand Decision

Following remand, the WCJ circulated a January 11, 2022 decision, in which he found that Employer accepted liability on a medical-only basis for Claimant's physical work injury. C.R., Item No. 13, Remand Decision, F.F. No. 7. Therefore, the physical/mental standard applied and Claimant bore the burden of proving that the accepted physical injury caused her mental injury. *Id.* The WCJ found that Claimant met her burden, as she sustained a physical injury that required medical treatment. *Id.*

The WCJ noted that Dr. Weiss testified Claimant still suffered from PTSD, although she was improving and should be able to return to full duty in two months. F.F. No. 8. Furthermore, Dr. Weiss restricted Claimant to light duty, which was not available. *Id.* As a result, the WCJ found that Employer was not entitled to a suspension of Claimant's benefits as of November 11, 2019, the date of Dr. Weiss's IME. *Id.*

The WCJ further found that Claimant received the LIBC 760 on September 12, 2019, and returned it on February 19, 2020. F.F. No. 9. Thus, while the WCJ reaffirmed the initial award of total disability benefits from May 28, 2019, and ongoing, the WCJ found that Employer was entitled to a suspension of benefits for the period of September 12, 2019 to February 19, 2020. F.F. No. 9; C.L. No. 2. Because Employer failed to pay Claimant benefits following the Board's denial of

9

supersedeas, the WCJ found that Employer violated the Act and imposed a 10% penalty on any compensation payable. F.F. No. 10. Employer appealed to the Board, which affirmed the WCJ.[3] C.R., Item No. 16. This appeal followed.[4]

## II. Issues

Employer contends that Claimant did not sustain a physical injury that required treatment and, therefore, the WCJ and Board erred in applying the physical/mental standard to Claimant's claim petition. Alternatively, Employer argues that Claimant was not entitled to ongoing total disability benefits because she voluntarily left the work force. Finally, Employer argues that the WCJ erred in imposing penalties, because the Board's remand order acted as a continuation of the original claim petition proceeding and the WCJ's initial decision awarding Claimant benefits was not a final order.

## III. Discussion
### A. Physical/Mental Standard

First, we address whether the WCJ and Board applied the incorrect standard. Employer maintains that Claimant did not sustain a physical injury requiring treatment and, therefore, the physical/mental standard did not apply. Following the

---

[3] One member of the Board dissented, stating that Claimant's disability was "due to a real or perceived fear of harm to her or her baby, not actual injury." C.R., Item No. 16, at 15. A claimant alleging a psychological injury stemming from a physical injury is not required to show abnormal working conditions. *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 728 (Pa. Cmwlth. 2008).

[4] Our review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). Substantial evidence is relevant evidence that a reasonable mind would deem adequate to support a conclusion. *Iacono v. Worker's* [sic] *Comp. Appeal Bd. (Chester Hous. Auth.)*, 624 A.2d 814, 817 (Pa. Cmwlth. 1993).

10

work injury, Claimant was monitored for several hours and released. She was reexamined 10 days later, diagnosed with an abdominal contusion, and discharged with no work restrictions. While Employer does not deny that Claimant was evaluated following the May 28, 2019 work injury, it contends that these "office visits" were not "treatment" under Pennsylvania law. Employer's Br. at 12. In short, Employer challenges whether the medical treatment Claimant received was extensive enough to permit application of the physical/mental standard to her claim petition.

In a claim petition, the claimant bears the burden of establishing a right to workers' compensation benefits and proving all necessary elements to support such an award. *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ. and PMA Grp.)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). The claimant must establish that her injury was sustained during the course and scope of employment and was causally related thereto. *Id.*

A claimant's burden in a physical/mental case is identical to the burden utilized to determine eligibility for workers' compensation. *Gulick v. Workers' Comp. Appeal Bd. (Pepsi Cola Operating Co.)*, 711 A.2d 585, 588 (Pa. Cmwlth. 2021). Under the physical/mental standard, the claimant must establish that her mental injury resulted from a triggering physical stimulus that arose in the course of employment, causing a physical injury. *Murphy v. Workers' Comp. Appeal Bd. (Ace Check Cashing Co.)*, 110 A.3d 227, 234 (Pa. Cmwlth. 2015). The claimant is not required to prove that the physical injury was disabling, or that it persisted throughout the life of the mental disability. *Id.* The physical injury must require medical treatment, however, and the mental injury must relate to the initial physical

11

stimulus. *Id.* Physical contact alone is not sufficient to implicate the physical/mental standard. *Id.* at 238.

The mental/mental standard, where a claimant alleges that she sustained a mental injury caused by a mental stimulus, requires proof that either (1) actual extraordinary events occurred at work that caused trauma and these specific events can be pinpointed in time, or (2) abnormal working conditions persisted over a longer period of time caused the injury. *Gulick*, 711 A.2d at 587. The claimant must establish that her mental injury was aggravated by *actual employment events*; a subjective reaction to normal working conditions will not support a finding that the claimant sustained a compensable injury. *Id.*

There is no dispute that Claimant sought treatment immediately following the May 28, 2019 work injury. She initially went to the school nurse, who advised Claimant to see her OB. The OB monitored Claimant for four hours and released her. Several days later, Claimant was evaluated at Worknet and diagnosed with an abdominal contusion. Employer accepted liability for Claimant's work injury on a medical-only basis. Analyzing whether the evidence demonstrates that Claimant sustained a physical injury requiring treatment requires an overview of the relevant case law on this issue.

In *Murphy*, the claimant, Pamela Murphy (Murphy), worked as a general manager for a check cashing business. On June 19, 2010, an armed robbery took place at her employer's main office, during which Murphy was held at gunpoint, forced to open every safe on the premises, and then left hog-tied in a second-floor room. After this ordeal, Murphy was taken to the hospital by ambulance when she experienced chest pain and difficulty with breathing and speaking. In July 2010, Murphy filed a claim petition alleging work-related injuries to her neck, shoulders,

12

spine, wrists, and ankles, as well as PTSD, anxiety, and depression. In addition to her live testimony, Murphy submitted photographs of her wrists and ankles that were taken by her daughter at the hospital. A WCJ credited Murphy's testimony that the robbery led to the development of her PTSD but rejected her testimony regarding the extent of her injuries, as the photographs of Murphy's wrists and ankles showed only slight bruising. As for Murphy's alleged ongoing physical difficulties, the WCJ accepted the opinion of her employer's medical expert, who attributed Murphy's back pain to degenerative disc disease. Therefore, the WCJ found that Murphy was not entitled to compensation for a physical injury. Furthermore, the WCJ found that the armed robbery did not constitute an abnormal working condition for Murphy, and she was not entitled to compensation for any mental disability resulting from the robbery.

Murphy appealed to the Board, arguing that the WCJ should have considered her claim under the physical/mental standard and the WCJ erred in finding that the armed robbery was not an abnormal working condition. The Board affirmed the WCJ, holding that Murphy's injuries were insufficient for application of the physical/mental standard. The Board also agreed with the WCJ that the armed robbery was not an abnormal working condition, as prior armed robberies had occurred at the employer's stores, Murphy had been trained on how to respond to a robbery, and Murphy's son-in-law was murdered several years prior during a robbery while working as a courier for the same employer.

In resolving Murphy's appeal to this Court, we noted that the claimant in a physical/mental workers' compensation case does not have to sustain a disabling injury to be compensated for a subsequent mental injury; however, *the physical injury causing the mental injury must require medical treatment*. Ultimately, we

13

held that the physical/mental standard was not applicable. Murphy's medical treatment following the robbery consisted of "oxygen and medication to help her calm down[,]" and she was not treated for the bruises on her wrists and ankles. *Murphy*, 110 A.3d at 238. We concluded that slight bruising that required no medical treatment was not the type of injury contemplated under the physical/mental standard. We vacated the Board's order affirming the WCJ but concluded that a remand was necessary for the WCJ to consider whether Murphy established that the armed robbery causing her PTSD was an abnormal working condition.

This Court also rejected the physical/mental standard in *Anderson v. Workers' Compensation Appeal Board (Washing Greene Alternative)*, 862 A.2d 678, 685 (Pa. Cmwlth. 2004). Although the claimant, Delilah Anderson (Anderson), had physical contact with the residents of a group home at which she worked, such contact was a normal and expected part of her job. Furthermore, Anderson was not treated for any physical injury. Rather, she sought treatment for anxiety and depression allegedly caused by her employment. As Anderson had not suffered a physical injury that required medical treatment, we concluded that the mental/mental standard applied to her claim petition.

Unlike the claimant's in *Murphy* and *Anderson*, the claimant in *Frankiewicz v. Workers' Compensation Appeal Board (Kinder Morgan, Inc.)*, 177 A.3d 991 (Pa. Cmwlth. 2017), Kenneth Frankiewicz (Frankiewicz), did seek medical treatment for physical symptoms that he attributed to an alleged April 20, 2012 work-related exposure to diesel fuel discharged by a plant located a mile from Frankiewicz's work site. Frankiewicz testified that he "perceived an odor of fuel" while working at a loading dock on the Delaware River after he observed fuel "floating on the water[.]" *Id.* at 993. Thereafter, Frankiewicz experienced headache, nausea, vomiting,

14

choking, a runny nose, and watery eyes. Frankiewicz was treated at an emergency room and released several hours later, with instructions to visit his family doctor if he did not feel better. Although Frankiewicz followed up with his family doctor a few days later, he was not prescribed any medication or referred to another physician for additional treatment. A week later, Frankiewicz developed a sinus infection, which he related to the April 20, 2012 work incident. Frankiewicz subsequently sought treatment for anxiety, depression, irritability, and sleep difficulty. In its defense to Frankiewicz's claim petition, his employer presented the deposition testimony of a medical expert who testified that he examined Frankiewicz and reviewed his medical records and that he could not identify "any specific medical treatment" required by the April 20, 2012 work incident. *Id.* at 994. An independent medical examiner appointed by the WCJ opined that there was no evidence to suggest Frankiewicz experienced a "medically important exposure" to diesel fuel on April 20, 2012, or that he suffered a "relevant or recognized medical adverse outcome." *Id.* In other words, the independent medical examiner found no evidence that Frankiewicz sustained any injury or illness as a result of the April 20, 2012 work incident. *Id.* The WCJ credited the employer's medical evidence over that provided by Frankiewicz's medical providers. Accordingly, having found that Frankiewicz did not suffer a work injury as a result of exposure to diesel fumes, the WCJ denied Frankiewicz's claim petition. Frankiewicz appealed to the Board, which affirmed.

In affirming the Board, we held that Frankiewicz's symptoms, which we likened to the bruises in *Murphy* and physical contact in *Anderson*, were insufficient to support an application of the physical/mental standard. Frankiewicz's symptoms were "transient and resolved" prior to his discharge from the emergency room. *Id.* at 999. Moreover, the WCJ rejected Frankiewicz's evidence that his physical

15

symptoms related to diesel fuel exposure and credited expert testimony that found no relationship between Frankiewicz's symptoms and "perceived odors" from a diesel fuel spill. *Id.*

Conversely, in *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty)*, 739 A.2d 1156, (Pa. Cmwlth. 1999), we concluded that the physical/mental standard applied where a claimant received medical treatment following his exposure to improperly discarded hypodermic needles. A WCJ accepted the claimant's testimony, and that of his psychiatrist, that the claimant's subsequent depression diagnosis related to this exposure. The WCJ concluded that the claimant sustained a work-related psychiatric injury; however, the claimant was not eligible for benefits under the Act because he failed to demonstrate that exposure to hypodermic needles was an abnormal working condition. The Board affirmed. We reversed the Board on the basis that the claimant was injured by discarded hypodermic needles at work to the extent that he required medical treatment, and the WCJ credited medical testimony that these injuries caused the claimant's psychiatric injury. As the claimant proved that his psychiatric injury resulted from a triggering physical stimulus that arose in the course of his employment, the physical/mental standard applied, and the claimant was not required to establish abnormal working conditions.

The above review suggests that we have declined to apply the physical/mental standard for matters in which a claimant has not received *any* medical treatment for the physical stimulus that caused a work injury. The claimants in *Anderson* and *Murphy* did not receive medical treatment for physical injuries sustained at work; any treatment they received related solely to the psychological injuries sustained as a result of their working conditions. In *Frankiewicz*, the accepted medical testimony

16

indicated that Frankiewicz did not experience a "medically important exposure" or adverse medical outcome from the April 10, 2012 work incident, and Frankiewicz failed to prove that his physical symptoms were caused by exposure to diesel fumes. *Frankiewicz*, 177 A.3d at 994. Ultimately, the WCJ concluded that Frankiewicz did not sustain a work-related injury at all.

We have, however, applied the physical/mental standard for matters in which a claimant's physical injury did not require extensive medical treatment. In *New Enterprise Stone & Lime Co., Inc. v. Workers' Compensation Appeal Board (Kalmanowicz)*, 59 A.3d 670, 676 (Pa. Cmwlth. 2012), we held that the claimant suffered a "significant physical stimulus" during a work-related motor vehicle collision that led to the death of the other driver. The claimant was treated at the emergency room for a chest wall contusion and right wrist contusion and released the same day. He did not receive any further medical treatment for his physical injuries but subsequently developed PTSD as a result of the fatal collision. We held that the physical stimulus suffered by the claimant in the work-related collision was sufficient to support a workers' compensation award for the claimant's related psychological injury. In *Bartholetti v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 927 A.2d 743 (Pa. Cmwlth. 2007), we held that the physical/mental standard applied where the claimant, an elementary school teacher, sustained a work injury while intervening in a fight between two students, which necessitated medical treatment for a bite to her arm. A WCJ awarded benefits based on credible psychological evidence that established the claimant's subsequent depression resulted from the physical injury she sustained at work. The claimant's employer presented no evidence to dispute the "clear and unequivocal proof" that the claimant's mental disability was caused by a work injury.

17

Instantly, Employer accepted liability for Claimant's May 28, 2019 work injury on a medical-only basis. Employer does not dispute that Claimant was scratched and punched in the abdomen by a student and that Claimant was thereafter monitored by her OB for four hours. Employer likewise acknowledges that Claimant sought treatment at Worknet for her work injury several days later, as she continued to suffer from abdominal pain. We must reject Employer's comparison of these undisputed facts to those in *Murphy*, *Anderson*, and *Frankiewicz*, as Claimant did, in fact, receive treatment for her work injury, and the symptoms related thereto. Application of the physical/mental standard to a workers' compensation case only mandates that a claimant suffer a precipitating physical stimulus that causes a physical injury requiring medical treatment, resulting in a mental injury. It does not require that a claimant suffer a disabling injury or that she receives extensive and/or repeated medical treatment for a work-related physical injury before obtaining benefits under the Act for a causally-related mental injury. Our jurisprudence on this issue does not require such quantification and we are not inclined to adopt such a requirement. Claimant sustained a work injury for which she sought medical treatment. She subsequently developed PTSD that the accepted medical evidence related to the work injury. Based on these undisputed facts, the WCJ did not err in applying the physical/mental standard in this matter.

## B. Claimant's Entitlement to Ongoing Disability Benefits

Next, Employer argues that the WCJ erred in awarding Claimant ongoing total disability benefits, as Dr. Weiss opined that Claimant could perform light-duty work that did not require contact with aggressive students. Dr. Weiss opined that Claimant no longer met the criteria for a diagnosis of PTSD. Employer submits, therefore,

18

that PTSD did not prevent Claimant from returning to work. Rather, Claimant chose not to return.

In a proceeding on a claim petition, the claimant bears the burden of establishing a work-related injury that renders the claimant incapable of performing her time-of-injury job. *Vista Int'l Hotel v. Workmen's Comp. Appeal Bd. (Daniels)*, 742 A.2d 649, 654 (Pa. 1999). If the employer asserts that the claimant can perform work within restrictions, the employer bears the burden of proving that suitable employment is available. *Id.*

Employer is correct that, according to Dr. Weiss, Claimant did not technically meet the criteria for PTSD. Regardless, Dr. Weiss opined "that she did have it, [and] was improving." C.R., Item No. 35, Weiss Deposition at 24. Critically, although Dr. Weiss indicated that Claimant was not disabled by PTSD, he never opined that she had fully recovered from this condition. During the IME with Dr. Weiss, Claimant indicated she would like to return to work for Employer, provided she was not exposed to aggressive students. Dr. Weiss felt that this was a reasonable conclusion, and he believed that Claimant could perform "light-duty work" that "did not involve contact with aggressive students." C.R., Item No. 35, Weiss Deposition, at 24. While Dr. Weiss suggested that Claimant chose not to return to work, he also opined that "[p]sychiatrically," Claimant "should not return to the classroom that she left," but she could "return to work in some other setting[.]" *Id.* at 34. The WCJ acknowledged Dr. Weiss's testimony that Claimant was "improving" from her PTSD and that she could perform light-duty work. C.R., Item No. 13, F.F., No. 8. Because Employer did not offer Claimant light-duty work, however, the WCJ found that it was not entitled to a suspension of Claimant's benefits as of November 11, 2019, the date of Dr. Weiss's IME. *Id.*

19

We discern no error on the WCJ's part, as the accepted medical testimony demonstrates that Claimant had not recovered from her PTSD and Dr. Weiss, Employer's own expert, recommended that she perform light-duty work and not return to her previous classroom setting. Therefore, as Claimant was not able to perform her time-of-injury job, and Employer presented no evidence that Claimant was offered a position within Dr. Weiss's restrictions, Claimant is entitled to ongoing total disability benefits.

## C. Penalties

Finally, we address whether the WCJ erred in awarding Claimant penalties based on Employer's failure to pay her benefits following the Board's September 20, 2021 remand decision. Employer acknowledges that the Board denied Employer's request for supersedeas on January 20, 2021. Employer argues, however, that it was not obligated to pay Claimant benefits, as the remand decision acted as a continuation of the original claim petition proceeding. Because an employer has no obligation to pay a claimant's disability benefits in the litigation of a claim petition, Employer maintains that the WCJ committed error in granting Claimant's penalty petition.

Per Section 435(d) of the Act, 77 P.S. § 991(d), penalties are appropriate where a violation of the Act or the Board's rules and regulations has occurred. The claimant who files a penalty petition bears the burden of proving such a violation, which must appear in the record for a penalty to be appropriate. *Shuster v. Workers' Comp. Appeal Bd. (Pa. Hum. Rels. Comm'n)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). If the claimant meets her initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act. *Id.* The assessment of penalties, and the amount imposed, are matters within the WCJ's discretion.

20

*Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008). Absent an abuse of discretion by the WCJ, this Court will not overturn a penalty on appeal. *City of Philadelphia v. Workers' Comp. Appeal Bd. (Thompson)*, 264 A.3d 408, 412 (Pa. Cmwlth. 2021) (internal citations omitted).

It is well settled that an employer's failure to commence payment of compensation in accordance with a WCJ's order constitutes a violation of the Act and the employer is subject to the imposition of penalties. *Id.* Section 430(b) of the Act, 77 P.S. § 971(b), provides that an employer refusing to pay compensation as awarded, and which has not been granted supersedeas, shall be subject to a penalty under Section 435. "[O]nly a grant of supersedeas relieves an employer of an obligation to pay." 264 A.3d at 413 (internal citations omitted). An employer is obligated to pay a claimant's disability benefits following the denial of its request for supersedeas, and a violation of the Act has occurred if the employer fails to pay the claimant's benefits. *CMR Constr. v. Workers' Comp. Appeal Bd. (Begly)*, 165 A.3d 69, 73 (Pa. Cmwlth. 2017).

In arguing that the Board's remand order continued the original claim petition proceeding, Employer cites *Commonwealth of Pennsylvania, Bureau of Workers' Compensation v. Workmen's Compensation Appeal Board (Allstate Insurance Company)*, 508 A.2d 388, 390 (Pa. Cmwlth. 1986), in which this Court held that a remand order from the Board was a "mere continuation of the" original termination proceeding.

Our decision in *Allstate* is readily distinguishable from the instant matter. *Allstate* concerned an insurer's entitlement to reimbursement from the Supersedeas

Fund.[5] After filing a termination petition, the insurer orally requested supersedeas, which a workers' compensation referee (referee) denied.[6] The referee subsequently suspended the claimant's benefits. The claimant appealed to the Board, which vacated the referee's order and remanded the matter "for further findings on the question of job availability." *Id.* at 389. Following remand, the referee issued a second order suspending the claimant's benefits and granting the insurer's application for reimbursement from the Supersedeas Fund. The Bureau of Workers' Compensation (Bureau) appealed to the Board, which affirmed. In its appeal to this Court, the Bureau argued that the insurer was not obligated to pay disability benefits after the referee issued the first suspension order and, therefore, the insurer was not entitled to reimbursement. The Bureau also argued that the insurer was obligated to seek a second supersedeas following the Board's remand order. We rejected these arguments, as the Board's remand order vacated the first suspension order, which effectively continued the original termination proceeding and reinstated the insurer's obligation to pay disability benefits.

The effect of a remand order on the finality of a WCJ's decision depends on the purpose of the remand order, as remand proceedings are restricted to the purpose indicated in the Board's order. *Repash v. Workers' Comp. Appeal Bd. (City of Phila.)*, 961 A.2d 227 (Pa. Cmwlth. 2008). Instantly, the purpose of the Board's September 20, 2021 remand order was clarification of the WCJ's reasons for applying the physical/mental standard to Claimant's case. The Board also directed

---

[5] Section 443 of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 999, provides for reimbursement from the Supersedeas Fund where a supersedeas has been requested and denied and compensation was paid to a claimant as a result thereof, and, thereafter, it is determined that compensation was not, in fact, payable.

[6] Referees were redesignated WCJs by the Act of July 2, 1993, P.L. 190.

that the WCJ address Dr. Weiss's testimony that Claimant did not meet the criteria for PTSD and address Claimant's failure to return the LIBC-760 within 30 days. The Board's order did not vacate the WCJ's December 9, 2020 decision granting Claimant's claim petition. As a result, following the Board's denial of supersedeas, Employer was obligated to pay Claimant's total disability benefits. The WCJ did not err in imposing penalties based on Employer's failure to make the required payments.

## IV. Conclusion

The WCJ and the Board correctly applied the physical/mental standard to Claimant's claim petition. The WCJ did not err in awarding Claimant ongoing total disability benefits, as the evidence demonstrates that Claimant could work a light-duty position that did not expose her to aggressive students, but Employer failed to demonstrate that a position was available within these restrictions. Finally, the WCJ did not err in awarding penalties for Employer's failure to pay to Claimant's benefits, as directed in the WCJ's December 9, 2020 decision.

ELLEN CEISLER, Judge

Judges Fizzano Cannon and Dumas did not participate in the decision of this case.

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The School District of Philadelphia, :
                   Petitioner :
                                       :
         v. : No. 1113 C.D. 2022
                                         :
Shahyra Smith (Workers' :
Compensation Appeal Board), :
                 Respondent :

# **O R D E R**

AND NOW, this 22nd day of August, 2023, the September 16, 2022 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The School District of Philadelphia, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1113 C.D. 2022 |
| | : | Submitted: June 5, 2023 |
| Shahyra Smith (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | |


**BEFORE:**   **HONORABLE RENÉE COHN JUBELIRER,** President Judge
**HONORABLE ELLEN CEISLER,** Judge
**HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge


**OPINION NOT REPORTED**


**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**                **FILED:  August 22, 2023**


While I am grateful Shahyra Smith (Claimant) gave birth to a healthy baby and am sympathetic to her situation, respectfully, under our current legal framework for examining physical-mental injury claims, I cannot agree with the majority that being observed for a few hours and advised to take Tylenol for pain constitutes medical treatment sufficient to support such a claim.  Nor am I convinced that Claimant's post-traumatic stress disorder (PTSD) is the result of the abdominal contusion she admittedly suffered when an autistic child in her class struck her in the abdomen with the back of a closed fist while Claimant was eight months pregnant with her fourth child, but rather was the result of fear of the incident itself.  For these reasons, I believe the Workers' Compensation Judge (WCJ) and Workers' Compensation Appeal Board (Board) erred in applying the physical-mental

standard.  Therefore, I would vacate the Board's Order and remand with instruction to evaluate Claimant's Claim Petition using the mental-mental standard instead.

I do not question that being punched in the stomach while eight months pregnant was traumatic for Claimant.  However, in order to proceed under a physical-mental standard, instead of the more onerous mental-mental standard,[1] a claimant must show "the mental injury resulted from 'a triggering physical stimulus,'" which we have interpreted "to mean 'a physical injury that **requires medical treatment**, even if that physical injury is not disabling. . . .'" *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 996 (Pa. Cmwlth. 2017) (quoting *Murphy v. Workers' Comp. Appeal Bd. (Ace Check Cashing Inc.)*, 110 A.3d 227, 234 (Pa. Cmwlth. 2015)) (emphasis added).  "In other words, a claimant must prove that a physical work injury requiring medical treatment caused a psychological injury." *Id.*  There is thus two requirements – a physical work injury that requires medical treatment and a causal link between the physical work injury and the psychological injury.  Here, I do not believe Claimant has met either requirement.

First, in affirming the WCJ's award of benefits, the Board reasoned that Claimant required "more medical attention" than was required by the claimant in *Murphy* for the bruised wrists she suffered during an armed robbery.  (Board Opinion, Sept. 16, 2022, at 10.)  In *Murphy*, the claimant received no treatment for the bruised wrists although she was treated with "oxygen and medication to calm her down" while at the hospital.  110 A.3d at 238.  The Board's inquiry stopped there.  However, when the "medical attention" Claimant received here is compared to that

---

[1] Under the mental-mental standard, a claimant is required to show that the injury is the result of abnormal working conditions. *Payes v. Workers' Comp. Appeal Bd. (Pa. State Police)*, 79 A.3d 543, 551 (Pa. 2013).

received by the claimant in *Frankiewicz*, Claimant's "medical attention" seems to be less or at least no more than that claimant's, and yet, we determined that claimant had **not met** his burden of showing his mental injury resulted from the work-related, physical stimulus. In *Frankiewicz*, the claimant alleged he suffered various mental injuries as a result of the physical injuries he suffered after inhaling diesel fumes. The claimant was transported to the hospital by ambulance after experiencing headache, nausea, vomiting, choking, a runny nose, watery eyes, sweating and shaking, throat pain, and abdominal pain. While at the emergency room, he was **treated** with intravenous saline, administered Tylenol orally, and administered anti-nausea medication intravenously. 177 A.3d at 999. His symptoms resolved, and he was discharged three and one-half hours later with instructions to follow up with his family physician if he did not feel better, which he did. *Id.* at 993, 999. In concluding the claimant did not establish that his mental injury resulted from the physical stimulus, the Court noted that the claimant's symptoms were "transient and quickly resolved" before he left the emergency room. *Id.* at 998-99.

Claimant here was monitored for two hours, left to pick up her other children, returned, and was monitored for another two hours to ensure there was no placental rupture, which thankfully there was not. (Claimant's Deposition (Dep.) Transcript (Tr.) at 11-12, Reproduced Record (R.R.) at 14a-15a.) She was discharged with instruction to take Tylenol for discomfort. (Exhibit C-02, Penn Medicine Emergency Room records, Certified Record Item 25.) Ten days after the incident, she visited Worknet and was diagnosed with an abdominal contusion but has not seen any physician with respect to the abdominal contusion since that time. (Claimant's Dep. Tr. at 23, R.R. at 26a.) When asked if anything changed with regard to her regular follow-ups or predelivery treatment, such as the frequency or

type of medical care Claimant was receiving, Claimant responded no. (Claimant's Dep. Tr. at 13, R.R. at 16a.)

I cannot agree that it is consistent with our case law to hold that four hours of observation and advice to take over-the-counter medication for discomfort, if needed, constitutes **medical treatment** sufficient to trigger a physical-mental injury claim. To do so would eviscerate the current medical treatment requirement by essentially enabling any claimant who suffers a work-related physical injury, regardless of how minor, to go to a medical professional to have it examined and be inevitably advised to take something for pain or follow up if needed, to claim recovery for any resulting mental injury therefrom. I do not believe this was what we envisioned when the courts interpreted physical stimulus to be a physical injury requiring medical treatment.

Notably, in cases where we have determined the physical-mental standard applies, the medical treatment is much more pronounced. *See, e.g.*, *Bartholetti v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 927 A.2d 743 (Pa. Cmwlth. 2007) (claimant required blood testing after being bitten to determine if she contracted any disease); *Donovan v. Workers' Comp. Appeal Bd. (Acad. Med. Realty)*, 739 A.2d 1156 (Pa. Cmwlth. 1999) (claimant required blood work and booster shots after being pricked by hypodermic needles). While not dispositive, it is interesting that Claimant's understanding of "treatment" is more involved than an office visit. When Claimant was being asked about prior treatment for depression and anxiety, she had the following exchange with counsel:

Q: With whom were you treating?

A: I wouldn't actually say I was getting treated. It was just like a onetime [sic] visit, and I never went back. So, if you want to call that treatment.

(Claimant's Dep. Tr. at 25, R.R. at 28a.)

Interpreting **medical treatment** to simply mean a medical visit with observation, and possibly being advised to take an over-the-counter medication for discomfort would be a change in the law. I, therefore, do not believe Claimant has met the first requirement.

Second, I agree with the dissenting statement of Alfonso Frioni, Jr., Board Chairman, in this matter that "[t]he disability here is due to a real or perceived fear of harm to [Claimant] or her baby, not actual injury." (Board Order, Sept. 16, 2022 (Frioni, C., dissenting).) I would find this matter is akin to *Murphy*, where the Court held it was not the physical injuries that caused the claimant's PTSD but the entire experience of the armed robbery. 110 A.3d at 238. Here, Claimant's PTSD does not appear to be the result of her physical injury, but rather the result of the entire experience itself. Therefore, I do not believe Claimant has met the second requirement.

Accordingly, respectfully, applying our current case law interpreting the physical-mental standard, I would vacate the Board's Order as it was error to apply the physical-mental standard to Claimant's Claim Petition, and remand this matter for the mental-mental standard to be applied instead. To hold otherwise essentially eliminates the physical injury requirement in the physical-mental standard, thus allowing recovery for what are essentially injuries that should be evaluated under the mental-mental standard, but without requiring a claimant to show abnormal working conditions as is currently required with the mental-mental standard.

_____
**RENÉE COHN JUBELIRER,** President Judge

RCJ - 5